UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Bryan Richards,

    Plaintiff,

v.                                                Case No. 18-10840

County of Washtenaw, Thomas Arnett,
Justin Berent, and John Cratsenberg,       Sean F. Cox
                                                      United States District Court Judge

    Defendants.
_____/

## **OPINION AND ORDER DENYING DEFENDANT BERENT'S MOTION FOR SUMMARY JUDGMENT**

This is a § 1983 action against three police officers and Washtenaw County for an incident that occurred at a University of Michigan football game. Defendant Justin Berent has moved for summary judgment on all claims, asserting qualified and statutory immunity. (ECF No. 22). Plaintiff Bryan Richards responded. (ECF No. 26). The Court heard oral arguments on November 1, 2018. For the reasons below, the Court shall deny Berent's motion without prejudice.

## **SOURCE OF FACTUAL BACKGROUND**

As a threshold matter, the Court will explain the source of the factual background for this motion. When Berent first filed this motion, his statement of facts heavily relied on references to testimony from Richards' criminal trial for the underlying incident. Cited portions of the transcript were attached to Berent's motion as Exhibit 1. (ECF No. 22-1). In Richards' response, he also

1

referenced portions of the criminal trial and included excerpts as Exhibit A. (ECF No. 22-2).[1] None of the provided excerpts, however, were certified as accurate transcriptions of the trial testimony. At the hearing on this motion, the Court expressed grave concerns about relying on incomplete, uncertified transcripts from a different proceeding to provide the primary factual basis for this summary judgment motion. Since then, Berent has requested leave to file a supplemental exhibit, which is a complete, certified copy of Richards' criminal trial. (ECF No. 33). The Court GRANTS this request, and uses this copy of the transcript as the basis for this opinion's factual background.

## BACKGROUND

Because Berent is moving for summary judgment, the Court will view the facts in the light most favorable to Richards.

On October 1, 2016, Richards and a group of friends were in Ann Arbor to see a University of Michigan football game. Richards weighs 285 lbs, has back problems, and has arthritis in his ankles, knees, and hips. Tr. of *People v. Richards*, 16-1002-FH, (Mich. Cir. Ct. March 13, 2017) ("*Richards* Tr.") 258, 279. (ECF No. 33). Richards was also tired from the previous day, which he had spent walking around airports on his way to Ann Arbor. *Id*. at 229.

Before the game, Richards and his friends tailgated at the house of one of their sons. *Id.* at 254-255. At this tailgate, Richards drank five 12-ounce Bud Lights over the course of roughly two hours and fifteen minutes. *Id.* at 255, 273. This beer was the only alcohol that Richards drank that day, and Richards did not feel intoxicated. *Id.* at 255. Richards did not appear intoxicated according to one of his friends, John Duda, *Id.* at 229.

---

[1]Notably, however, Richards' counsel pointed out some of the problems of relying on these transcripts in the affidavit that he filed in response to Berent's contemporaneous motion to stay discovery. (ECF No. 24-7).

As the game approached, Richards and his friends began the roughly one-and-a-half mile walk to the stadium. *Id.* at 275. Richards started feeling winded and the arthritis in his left ankle flared up. *Id.* at 257. Richards attempted to rest, but his friends encouraged him to continue because they were already late for the game. *Id.* Richards decided to soldier on, but put his arms around Duda and another friend, so that he could take weight off of his left foot. *Id.* at 258.[2] When the group arrived at the stadium's security gate, Richards walked in on his own. *Id.* Once he was in the stadium, he again put his arms around his friends. *Id.* at 258-259.

As Richards and his friends were walking to their seats, Duda accidently kicked Richards' left ankle. *Id.* at 259. Richards let go of his friends, doubled-over in pain, and grabbed his arthritic ankle. *Id.* Campus police officers approached Richards, and asked if he had been drinking. *Id.* Richards replied "no." *Id.* The officers stated that they thought he was drunk and then gave him a choice between being arrested and going to the infirmary. *Id.* at 260. After a bit more argument, Richards agreed to the latter. *Id.* Medics from Huron Valley Ambulance ("HVA") strapped Richards onto a motorized cart and drove him to the infirmary. *Id.*

At the infirmary, the medics placed Richards on a gurney that had fixed, steel railings on both sides. *Id.* at 263. Richards complied with the medical staff for about 15 minutes. *Id.* at 262. Eventually, he stated that he was refusing treatment and began to leave by scooting to the end of the bed. *Id.* at 263. Just as Richards reached the end, HVA medic Rick Johnson "shoved [him] back"

---

[2] Duda described the arrangement like this: "we weren't carrying....[b]eing the die hard fans that we are, we're, you know, we weren't going to – no man left behind type thing. So, you know, we're like well, come on, you know, you don't have to rest. We'll –you know, we'll help you type of thing. It was you, know, it was kind of being funny that, you know, he was out of shape and not able to make it in." *Id.* at 243. Thus, the arrangement seems to have been a display of fandom rather than a medical necessity.

3

on. *Id.* at 263-264. Johnson kept his hands on Richards' chest and told him that he could not leave because he was drunk. *Id.* at 264.

Richards got off the bed and started to walk out of the room. *Id.* Johnson grabbed Richards' right bicep and tried to hold him back. *Id.* Richards and Johnson argued and struggled with each other for "probably less than 10 seconds." *Id.* Richards never pushed, punched, or rushed Johnson. *Id.* at 265-266.

At this point, University of Michigan Police Officer Justin Berent and Washtenaw County Deputy Sheriffs Thomas Arnett and John Crastenberg arrived on the scene. Berent entered the room first and saw Richards struggling to get away from Johnson.³ *Id.* at 202. Berent grabbed Richard's left arm, twisted it behind Richards' back, and bent him over. *Id.* at 266. ⁴ Richards described this maneuver as an "arm bar." *Id.* at 266.

Once Richards was bent over, one of the officers "jumped on the front of [his] body from over [his] head onto [his back]." *Id.* at 264-265. Richards collapsed onto his hands and knees. *Id.* at 265. The officers then "started jumpin' [sic] up and down on [him]." *Id.* During this process, Richards hit his head on a table, and Berent injured his finger. Def's Statement of Undisputed Facts ¶ 18.

Once Richards was on the ground, Berent and the other officers warned Richards to "stop

---

³ Berent actually testified that he saw Richards "forcefully push Johnson." But, for this motion, the Court assumes that Richards and Johnson were struggling in the manner described by Richards (i.e. Johnson was holding Richards by the bicep, preventing him from walking away).

⁴The Court infers that Berent was the officer who twisted Richards' left arm. Berent testified that he grabbed Richards' left arm. *Id*. at 202. Richards testified that "someone grabbed my left arm, twisted it back behind me which bent me over." *Id*. at 264. Drawing all inferences in favor of Richards, the Court concludes that Berent twisted the left arm.

4

resisting." *Richards* Tr. 277. This was the first time that the officers indicated to Richards that they were police. *Id*. at 277. After the officers handcuffed him, Richards stated that he going to sue them. *Id*. at 270. The officers informed him that he was being charged with resisting and obstructing an officer. *Id.*

In the end, Richards was charged with (1) assaulting, resisting, or obstructing a police officer (Berent), (2) assaulting, resisting, or obstructing a medical first responder (Johnson), and (3) misdemeanor assault and battery (against Johnson). Richards' Crim. Compl. A jury acquitted him of all charges. *People v. Richards*, March 14, 2017, 65.

On March 13, 2018, Richards filed this § 1983 action against Berent, Arnett, Crastenberg, and Washtenaw County. As to the officers, Richards alleges (1) Fourth Amendment claims for unreasonable search and seizure, (2) state-law false arrest/false imprisonment claims, (3) Fourth Amendment claims for excessive force, (4) Fourth Amendment claims for malicious prosecution, and (5) state-law malicious prosecution. Against Washtenaw County, Richards alleges failure to train and/or supervise its police officers

On June 20, 2018—nearly eight months before discovery ends—Berent moved for summary judgment on all counts, and for a stay of discovery pending the Court's ruling on his motion. (ECF No. 22, 23). The Court denied Berent's motion for a stay. (ECF No. 32).

In Berent's motion for summary judgment, he argues that qualified and statutory immunity shield him from liability for his conduct.

## ANALYSIS

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists when "the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Berent argues that qualified immunity shields him from Richards' § 1983 claims. Thus, Richards "bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015).

I.  **Search and Seizure Claim (Count I)**

In Count I of his Complaint, Richards alleges that Berent violated his Fourth Amendment right to be free from unreasonable searches and seizures when he "falsely arrested and falsely detained Plaintiff without probable cause or exigent circumstances." Compl. ¶ 33.

Berent's liability must be assessed individually, based on his own actions. *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008) (citing *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)). Thus, the Court will consider only the events that took place after Berent arrived at the infirmary.[5]

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002). "A police

---

[5] The parties spend the first portion of their briefs arguing about whether Richards' initial "medical detention" (i.e. when the campus police officers stopped him and forced him to go to the infirmary) was justified. Berent was not involved in that detention and those officers are not named in this case. Therefore, the propriety of the initial detention is not relevant to this motion, and likely not relevant to the rest of the case.

6

officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000). To determine whether probable cause existed, the Court must examine the totality of the circumstances and may "consider only the information possessed by the arresting officer at the time of the arrest." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.), *cert. denied*, 554 U.S. 903, 128 S.Ct. 2938, 171 L.Ed.2d 865 (2008). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id*.

Here, it is unclear what the officers knew before arriving at the infirmary, or how they came to know it. In Berent's report, he stated that he "was advised that HVA requested police assistance at the medical holding area." (ECF No. 22-2, PageID 173). At Richard's criminal trial, Berent testified that the officers "were alerted that HVA needed assistance" and that, when they arrived, medical staff stated "that an intoxicated subject couldn't leave, and an assault just took place." Tr. *Richards*. 732. Cratsenberg testified that "medical personnel came from the other side saying they needed PD in the medical." *Id*. at 717. But Arnettt testified that the officers received a radio call:

> Q      Okay. At some point are you alerted to an incident that's taking place in the HVA clinic?
>
> A      When we stopped into the lockup to use the restroom, the HVA clinic is in the same building. You have to walk outside to get to it. While we're waiting to use the restroom, a radio call came for someone being assaulted at the HVA clinic. That's when we responded.
>
> Q      Okay. Now, I know you wear a radio to help communicate with dispatch and other law enforcement officers working the games, is that correct?
>
> A      Yes, sir

| | | |
|---|---|---|
| Q | | And so the radio – you are wearing a receiver and you hear a request to go to the HVA clinic, is that correct? |
| A | | Yes, sir |

*Id.* at 167-168.

The source is important because it goes to the question of whether Berent reasonably relied on the information to justify his seizure of Richards. Based on these contradicted versions of the initial alert, the Court is unable to conclude that Berent reasonably relied on any information that he possessed before walking into the infirmary.

When Berent arrived at the scene, he saw a uniformed medic physically restraining a man who did not appear intoxicated. Berent immediately seized the man, put him into an arm bar, and took him to the ground. On these facts, the Court must conclude that Berent did not have probable cause to seize Richards for any crime and that Berent can not justify the seizure as a medical detention. Plaintiff's version of the events shows that Berent violated his clearly established constitutional right to be free from unreasonable seizure and, at this time, qualified immunity does not defeat this claim.

## II. Excessive Force (Count III)

In Count III of his Complaint, Richards alleges that Berent "employed unnecessary and unreasonable excessive force which resulted in significant injuries." Compl. ¶ 47.

"It is well-established that individuals have a constitutional right to be free from excessive force during an arrest." *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 606 (6th Cir. 2006). "A police officer uses excessive force in arresting a suspect if his actions are objectively unreasonable given the nature of the crime and the risks posed by the suspect's actions." *Smith v. Stoneburner*, 716 F.3d 926, 933 (6th Cir. 2013). The Court views "the situation from the perspective of a

reasonable officer on the scene at the time," considering the severity of the crime, whether the suspect posed a threat, and whether the suspect was actively resisting arrest. *Smith v. City of Troy*, 874 F.3d 938, 943-44 (6th Cir. 2017).

Here, the severity of the possible crime weighs in Berent's favor. "A forceful takedown or 'throw down' may very well be appropriate in arrests or detentions for assault." *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012).

But, the other two considerations favor Richards. Richards was attempting to leave the room and Johnson had grabbed his arm. The two men were arguing with each other, but there is no evidence that Richards appeared threatening or likely to assault anyone. Although Richards is a large man, he was outnumbered by police 3-to-1. Based on this evidence, Court concludes that the threat factor favors Richards.

The Court must also conclude that the resisting-arrest factor weighs in favor of Richards. Richards testified that Berent did not indicate that he was police officer before taking Richards to the ground. *Richards* Tr. 277. The officers effectively "blindsided" Richards before he knew they were officers. *See McDonald v. Flake*, 814 F.3d 804, 815 (6th Cir. 2016) (finding that a police officer violated plaintiffs' constitutional right to be free from excessive force when he "led a group of alcohol-impaired officers in an attack on the *unsuspecting* plaintiffs") (emphasis added). Further, there is no evidence that the decision to perform the takedown was caused by Richards resisting arrest. In Richards' version of the facts, Berent walked into the infirmary, immediately grabbed Richards' arm, and immediately took him to the ground. Thus, the resisting arrest factor favors Richards.

Considering the above factors and the totality of the circumstances, and viewing the available

evidence in light most favorable to Richards, the Court concludes that, at this time, qualified immunity does not preclude Richards' excessive force claim against Berent.

### III. Malicious Prosecution (Count IV)

In Count IV, Richards alleges that Berent initiated a malicious prosecution against him.

A Fourth Amendment malicious prosecution claim encompasses wrongful investigation and prosecution. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). It is distinct from a false arrest claim, as it "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). The claim itself is a misnomer; no showing of malice is required. *Id.* at 309. Instead, to succeed on his Fourth Amendment malicious prosecution claim under § 1983, Richards must prove: (1) a criminal prosecution was initiated against him and Defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) Plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in his favor. *Id.* at 308-09. The parties do not dispute that Plaintiff has satisfied the third[6] and fourth element here.

Berent did not decide to prosecute Richards; under Michigan law that decision lies in the prosecutor's sole discretion. *Moldowan v. City of* Warren, 578 F.3d 351, 400 (6th Cir. 2009). Yet this does not end the analysis. Richards may show that Berent influenced or participated in the decision, an inquiry that "hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 625 F.3d at 311 n. 9.

---

[6]Although Berent asserts that "[p]laintiff cannot satisfy elements 1 through 3 of the Sykes analysis," he does not offer any argument related to the third element. (ECF No. 22 PageID 144-145).

10

The crux of Richards' argument is that Berent lied in his police report because Richards threatened to sue him. Specifically, Richards claims that Berent falsely reported that he saw Richards push Johnson. Pl. Resp. to Def. Mot. for Summ. J. 18-19. There must be some evidence to show that the impact of the misstatements and falsehoods in the case report extended beyond the initial arrest and influenced Richards' continued detention. *Sykes*, 625 F.3d at 316.

At the criminal trial, Berent testified—consistent with his report—that Richards shoved Johnson. Tr. *Richards*. 202. This was direct evidence of two of Richards' criminal charges, and changed the case from a "he said/he said" to a "he said/they said." The Court must conclude that, based on its review of the evidence provided, the alleged misstatements influenced the decision to prosecute Richards.

Further, viewing the evidence in the light most favorable to Richards, there was no probable cause to believe that Richards assaulted either Johnson or Berent. For these reasons, the Court concludes that, at this time and based upon the evidence provided, qualified immunity does not shield Berent from Richards' malicious prosecution claim.

**IV.     State Law Claims for False Imprisonment and Malicious Prosecution**

In Counts II and V, Richards alleges state-law false imprisonment and malicious prosecution claims. Berent claims that he is immune from liability for these claims under Michigan law.

In Michigan, a police officer is entitled to individual governmental immunity if

(1) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(2) the acts were undertaken in good faith, or were not undertaken with malice, and

(3) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne County*, 482 Mich. 459, 480 (2008)

Richards only disputes the second factor, and Berent's claim of government immunity can be disposed of easily. "It is a recognized rule that malice may be inferred from want of probable cause." *Matthews v. Blue Cross Blue Shield of Michigan*, 456 Mich. 356, 378 n. 14 (1998). Here, the evidentiary basis provided at this time shows that Berent's actions were not supported by probable cause and, therefore, malice may be inferred. Thus, at this time, Berent is not entitled to statutory immunity on these claims.

## V. The Effect of this Order

The Court notes that discovery is ongoing. The above conclusions and analysis on Berent's qualified and governmental immunity defenses are based only on the limited evidence that was provided to the Court to support this motion, viewed in the light most favorable to Richards. The Court acknowledges that these conclusions and analysis might need to change as more evidence is gathered. For example, Richards and the officers might be deposed and provide a clearer version of what happened that day. For this reason, the Court will deny Berent's motion without prejudice.

## CONCLUSION AND ORDER

For these reasons, the Court ORDERS Defendant Justin Berent's Motion for Summary Judgment (ECF No. 22) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

>                    s/Sean F. Cox
>                    Sean F. Cox
>                    United States District Judge

Dated: December 11, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 11, 2018, by electronic and/or ordinary mail.

>                s/Jennifer McCoy
>                Case Manager